UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In the Matter of the Search of a Black FOXX Cellular Telephone Seized from Justin Gaglio | M.J. No. 24-1599-DLC |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Gutierrez, being sworn, state:

**Introduction and Agent Background**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Boston Division, in Boston, Massachusetts. I have been employed in this capacity since October 27, 2019. I am currently assigned to the Domestic Terrorism squad of the FBI's Boston Division. As an FBI Agent, I am responsible for the investigation of federal criminal offenses. I have participated in various investigations involving national security matters. I routinely work with agents, troopers, and officers with dozens of years of experience investigating crimes involving organized criminal groups and terrorist organizations. In my capacity as a special agent, I have received training and gained experience in search and seizure, the use of confidential human sources, international and domestic terrorism, violent crimes, computer crimes, and various other crimes. As a result of my training and experience, I am familiar with the tactics, methods and techniques used by terrorist networks and their members, including the use of computers, cell phones, social media, email, and the internet in connection with criminal activity. Before being employed as an FBI Agent, I served as a U.S. Customs and Border Protection Officer for over four years. As a Special Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

1

**Purpose of the Affidavit**

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for the following telephone:

    a. A black FOXX cellular telephone, with a damaged screen, in a clear protective case, with red stickers placed over the camera lenses, and a white sticker with the name Justin Gaglio, as well as a date of birth on the back (hereinafter, the "Target Telephone").

3. The Target Telephone was seized from Justin David GAGLIO (hereinafter, "GAGLIO") at the time of his arrest on September 27, 2024. The Target Telephone is in the possession of the FBI, as further described in Attachment A, which is incorporated herein.

4. Prior to his arrest, on September 17, 2024, I submitted an affidavit in support of a criminal complaint charging GAGLIO with one count of Transmitting Interstate Threats, in violation of 18 U.S.C. § 875(c) (hereinafter, the "Target Offense"). That affidavit, which is attached hereto as Exhibit 1, and is incorporated by reference herein, provides probable cause that GAGLIO violated the Target Offense. On the same date, this Court issued a criminal complaint and arrest warrant, finding probable cause that GAGLIO committed the Target Offense. *See* 24-MJ-4399-DHH. As set forth in Exhibit 1, on or about September 8, 2024, GAGLIO sent a threat to an elected official (hereinafter, the "Elected Official")[1] via an online communication that was sent in interstate commerce.

5. On October 17, 2024, a federal grand jury returned a single count indictment charging GAGLIO with the same offense. *See United States v. Gaglio*, 24-cr-10320-IT.

---

[1] The Affidavit uses the term "the Elected Official" to protect the identity and safety of the individuals referenced.

6.       Based on my training and experience, and the training and experience of law enforcement personnel who routinely handle such evidence, I understand that the Target Telephone has been stored in a manner in which its contents are, to the extent material to the investigation, in substantially the same state as they were when the Target Telephone first came into investigators' possession.

7.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is submitted for the limited purpose of establishing probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.       As further set out below, there is probable cause to believe that the Target Telephone contains evidence, fruits, and instrumentalities of the Target Offense, as described in Attachment B, which is incorporated by reference herein.

### Facts Supporting Probable Cause

9.       As set forth in detail in Exhibit 1, between January 2023 and September 2024, GAGLIO sent over 80 separate messages to the Elected Official via the Elected Official's website. In each of these requests he identified himself by name, and in most he included his Social Security number. In his messages, GAGLIO claimed to have been mistreated by various different government agencies, and he requested assistance and payment from the Elected Official. GAGLIO's claims of mistreatment were unfounded and not supported by any evidence. Some of the messages included documents that GAGLIO uploaded to the Elected Official's website.

10.      In or about June 2023, GAGLIO began to escalate his rhetoric in his online messages to the Elected Official, and he started making more violent assertions. GAGLIO's online messages to the Elected Official continued through 2023 and into 2024.

11.     On or about September 8, 2024, at approximately 12:31 p.m., GAGLIO submitted a contact request to the Elected Official's website under the category of "Help With A Federal Agency." GAGLIO entered personal identifying information including his first and last name, his date of birth, the same email address used in the prior messages, as well as a telephone number and a primary address in Lynn, Massachusetts. Under the category of Social Security Number he entered "Fuck you." Under the category for country of birth, GAGLIO entered "Fuckoff." Under the categories for beneficiary name, beneficiary alien registration number, beneficiary country of birth, petition form type, and USCIS receipt number, GAGLIO entered, "Fuckyou."

12.     In the content section of the contact form, where the website asks for an "explanation of your reason for requesting assistance" from the Elected Official's office, GAGLIO wrote the following:

> I am going to murder your entire family!
> I am contemplating going yo [sic] your home and butchering your fucking family [REDACTED]! If the air for e [sic] ft Meade the faggot fucking nsa doesn't stop playing shit in my head you and your entire family [first name of Elected Official's grandchild][2] also and your [spouse] fucking die a horrific death.

13.     The message above was received by the Elected Official's office and was reported to the United States Capitol Police.

14.     Based on the investigation, I am aware that the message described above, which was sent to the Elected Official via the Elected Official's website on September 8, 2024, was sent over the internet via a mobile gateway serviced by T-Mobile in Everett, Massachusetts. Based on my training and experience, I understand that a mobile gateway IP address is typically accessed by a portable device such as a cellular telephone. The message was then routed over the internet

---

[2] The actual name listed was the first name of the Elected Official's grandchild. In order to protect the identity and the safety of that individual, their name is not being disclosed here.

and was routed by servers operated by the federal government in Virginia and Pennsylvania.

15. On September 12, 2024, Massachusetts state investigators made an exigent information request to T-Mobile for subscriber information, call detail records with cell sites, as well as continuous location information, timing advance, and data sessions related to the telephone number listed in the September threat to the Elected Official. The location information indicated that the telephone was routinely nearby the address listed by GAGLIO in the September threat, however, the data provided by T-Mobile indicated that the cellular telephone had not been in use for several hours. Despite that fact, investigators were able to locate GAGLIO just outside of the address listed by GAGLIO in the September 8, 2024 threat to the Elected Official. GAGLIO told investigators that he lost his cellular telephone during the day on September 12, 2024 on a bus. State investigators then brought GAGLIO to Salem Hospital in Salem, Massachusetts where he was held pursuant to Massachusetts state law. *See* M.G.L. c. 123, § 12 (Emergency restraint and hospitalization of persons posing risk of serious harm by reason of mental illness).

16. On September 27, 2024, GAGLIO was released from Salem Hospital and was immediately arrested by agents with the FBI pursuant to the arrest warrant issued by this Court.

17. At the time of his arrest, GAGLIO had the Target Telephone on his person. The Director of Security at Salem Hospital advised agents that GAGLIO had the Target Telephone in his possession upon his arrival at Salem Hospital.

18. Agents took possession of the Target Telephone at the time of GAGLIO's arrest. Agents attempted to call the number listed by GAGLIO in the September 8, 2024 threat to the Elected Official, but the Target Telephone did not ring. Based on that fact, I do not believe the Target Telephone is assigned the phone number listed in the September threat. As stated above, GAGLIO informed investigators that he lost his cellular telephone on a bus.

19. As part of the investigation, I have reviewed the messages that GAGLIO sent to the Elected Official and I am aware that GAGLIO sometimes listed different telephone numbers as belonging to him, in addition to the number he listed in the September 8, 2024 threat.

20. Since at least as early as January 2019, GAGLIO has contacted or attempted to contact multiple government officials using multiple different telephone numbers. A number of the messages GAGLIO sent to those government officials were similar in nature to several of the messages he sent to the Elected Official, including some that were sent on the same dates.

21. As set forth herein, GAGLIO is believed to have used electronic communications, including use of the internet, to threaten the Elected Official as well as other government officials. The internet is often accessed using a cellular telephone. Given GAGLIO's history of sending electronic communications to government officials, as well as his use of multiple telephone numbers, there is probable cause to believe that there will be evidence relevant to the Target Offense on the Target Telephone.

## SEIZURE OF COMPUTER EQUIPMENT AND DATA

22. From my training and experience, and the experience of law enforcement personnel who handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

23. Based on my training and experience and information provided to me by other investigators, I am aware that individuals frequently use computer equipment and cellular telephones to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently accomplished through sending and receiving email, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of

activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

24. Based on my training and experience, and information provided by other investigators, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and emails, and storing a vast range and amount of electronic data. Examining data on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

25. From my training and experience, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones.

26. Based on my knowledge, training, experience, and information provided to me by other agents, I know that computer files or remnants of such files can be recovered months or years after they have been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

   a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their computers, they can easily transfer the data from their old computer to their new computer.

   b. Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data

7

remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media (in particular, computers' internal hard drives) contain electronic evidence of how the computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but computer users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

e. Data on a storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

f. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti- virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer

9

accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

g. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

h. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

//
//
//
//
//
//
//
//
//

## **CONCLUSION**

27.     Based on the information described herein, there is probable cause to believe that evidence, fruits, and instrumentalities of the Target Offenses, as described in Attachment B, will be found on the Target Telephone, which is described in Attachment A. The Target Telephone is in the custody of the FBI, therefore, there is good cause to authorize the search of the Target Telephone during both daytime and nighttime hours.

Sworn to under the pains and penalties of perjury,

*Brian Gutierrez*
Brian Gutierrez
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1 on November __4__, 2024.

_____
HON. DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
(Description of Property to be Search)

A black FOXX cellular telephone, with a damaged screen, in a clear protective case, with red stickers placed over the camera lenses, and a white sticker with the name Justin Gaglio, as well as Justin David Gaglio's date of birth on the back, whose service provider is unknown, which agents seized from Justin David Gaglio at the time of his arrest on September 27, 2024, and which is currently stored in evidence at the Federal Bureau of Investigation, Boston Field Office (hereinafter, the "Target Telephone"). Photographs of the Target Telephone are depicted below:

  

13

## ATTACHMENT B-1

### Items to be Seized

All records, from January 1, 2019 to the present, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 18 U.S.C. § 875(c) including those related to:

1. All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data relating to or referencing sending threats the Elected Official or other government officials located in the equipment of the Target Telephone, including but not limited to:

    a. Logs of calls (including last numbers dialed, last calls received, time of calls, missed calls, and duration of calls) both to and from the device;

    b. Text messages both sent to and received by the device (including any in draft form) relating to or referencing sending threats to the Elected Official or other government officials;

    c. Incoming and outgoing voice mail messages both to and from the device relating to or referencing d sending threats to the Elected Official or other government officials;

    d. GPS data related to the dates under investigation;

    e. Records pertaining to the travel or whereabouts of Justin David Gaglio at times relevant to the investigation;

    f. Browser messages and/or internet communications (e.g., e-mail, text messages) both to and from the device (including any in draft form) relating to or referencing sending threats to the Elected Official or other government officials, including internet search history;

    g. Documents, photographs, or videos in any format, including but not limited to Microsoft Word or Adobe PDF files, relating to or referencing sending threats to the Elected Official or other government officials;

    h. All data within the device evidencing ownership, possession, custody, control, or use of the device; and

    i. Service Provider handset unlock password(s) and any other passwords used to access the electronic data described above.

### Definitions

For the purpose of this warrant:

    A. "Equipment" means any hardware, software, storage media, and data.

B. "Hardware" means any electronic device capable of data processing (such as a cellular telephone or smartphone, wireless communication device, or GPS navigation device); any peripheral input/output device (such as a drive intended for removable storage media); any related communication device (such as a SIM card), and any security device, (such as electronic data security hardware and physical locks and keys).

C. "Software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

D. "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive or memory card).

E. "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F. "A record" is any communication, representation, information or data. A "record" may be comprised.

### Return of Seized Equipment

If, after inspecting seized equipment, the government determines that the equipment does not contain contraband or the passwords, account information, or personally identifying information of victims, and the original is no longer necessary to preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to a forensic copy's authenticity and accuracy (but not necessarily relevance or admissibility) for evidentiary purposes.

If equipment cannot be returned, agents will make available to the equipment's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, personally identifying information of victims; or the fruits or instrumentalities of crime.